UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23265-CIV-MOORE/SIMONTON

BARBARA SCHULTE,

    Plaintiff,

v.

NCL (Bahamas) Ltd.,

    Defendant.
_____/

## ORDER ON DISCOVERY MOTIONS

Presently pending before the Court is Plaintiff's Motion for Protective Order and to Compel Discovery (DE # 23) and Defendant's Motion for Protective Order Regarding Production of Video (DE # 22).  The Motions are fully briefed (DE ## 24, 26, 27, 29).  Also, pending before the Court is Plaintiff's Motion to Compel 2nd Shipboard Inspection (DE # 30) and Motion to Expedite Briefing Schedule on Motion to Compel 2nd Shipboard Inspection (DE # 35).[1]  The Motions have been referred to the undersigned (DE # 5).  A hearing was held on the Motions on January 25, 2011, wherein, after hearing arguments from counsel, the undersigned announced her rulings on the Motions.  This Order incorporates the rulings made from the bench at that hearing.

I. BACKGROUND

This matter was initiated when Plaintiff Barbara Schulte filed a Complaint against Defendant NCL, (Bahamas), Ltd. ("NCL"), seeking damages related to injuries sustained

---

[1] Plaintiff's Motion to Overrule Discovery Objections and Compel Better Discovery Answers (DE # 33) is also pending before the Court but is not ripe for adjudication.  However, the Court discussed the pending Motion with the Parties at the hearing on the other Motions.  At the hearing, the Parties were directed to confer with one another based upon the guidance provided by the Court in an attempt to resolve the issues raised in the Plaintiff's Motion prior to January 31, 2011, the due date for Defendant's response to that Motion.

by Plaintiff following a slip and fall incident aboard the NCL cruise ship, the NORWEGIAN JEWEL (DE # 1).  The Complaint sets forth one-count of negligence against NCL for, among other things, allegedly failing to keep the ship deck's surface clean and dry and failing to warn Plaintiff that the deck was slippery, wet and hazardous (DE # 1 ¶ 13).

## II. PENDING MOTIONS

### A. Defendant's Motion for Protective Order and Plaintiff's Motion for Protective Order & Motion to Compel Discovery

Defendant has filed a Motion for Protective Order Regarding Production of Video (DE # 22) seeking to have this Court issue a protective order which permits the Defendant to not produce, in response to Plaintiff's Request for Production, a video taken aboard the cruise ship at the time of the Plaintiff's accident.  Defendant asserts that it should not have to produce the video because it was preserved in anticipation of litigation and thus is protected by the work product privilege (DE # 22 at 2).  In addition, Defendant asserts that producing the video to Plaintiff prior to Plaintiff's deposition being taken will severely prejudice Defendant because Plaintiff will be able to tailor her deposition testimony to the events captured on the video.  Defendant further argues that Plaintiff will suffer no prejudice if the video is provided to her after her deposition is completed.

Conversely, Plaintiff has filed a Motion for Protective Order and to Compel Discovery (DE # 23), that basically mirrors Defendant's Motion for Protective Order, and which seeks to relieve Plaintiff from having to attend her deposition until NCL produces the video of the accident to the Plaintiff.  In addition, Plaintiff seeks to compel NCL to produce the video in response to Plaintiff's Request for Production propounded on NCL which specifically requested production of all "...video depicting the subject accident." (DE # 23 at 1).

Both Parties responded in opposition to the respective Motions, and at the hearing on the Motions, both reiterated their positions as stated in their papers.

i. <u>Framework for Analysis</u>

Federal Rule of Civil Procedure 26(b) which sets forth the work product doctrine, provides in relevant part,

> 3) Trial Preparation: Materials.
>
> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).
>
> But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Thus, as contemplated by this Rule, the work product doctrine protects materials prepared by an attorney acting for his client in anticipation of litigation from disclosure. *See* Federal Rules of Civil Procedure, Advisory Committee Notes, Rule 26(b)(3), 1970 Amendment (discussing development of work product doctrine). The work product doctrine is distinct from and broader than the attorney-client privilege, and it protects materials prepared by the attorney, whether or not disclosed to the client, as well as materials prepared by agents for the attorney. *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979).[2]  However, in order for the work product doctrine to apply, the

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

3

party asserting the doctrine must demonstrate that at the time the materials were created or drafted, the entity must have anticipated litigation. *CSK Transp., Inc. v. Admiral Ins. Co.*, 1995 WL 855421, at *2 (M.D.Fla. July 20, 1995). Thus, materials or documents drafted or created in the ordinary course of business are not protected. *Id*.

Therefore, a court must determine when a contested item was created, and why that item was created in assessing the applicability of the work product doctrine. See, e.g. *In re Sealed Case*, 146 F.3d 881, 884 (D.C.Cir. 1998) ("The 'testing question' for the work-product privilege ... is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'").

Like assertions of attorney-client privilege, the burden is on the party withholding discovery to show that the documents should be afforded work-product immunity. See *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir.1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company*, No. 6:04-CV-1838-Orl-22JGG, 2006 WL 1733857 at *2 (M.D.Fla. June 20, 2006) (citing *Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042 (10th Cir.1998)) ("the party asserting work product privilege has the burden of showing the applicability of the doctrine").

ii. <u>Application of Law to Facts of Instant Case</u>

Based upon the following analysis, as explained on the record at the hearing, the undersigned concludes that the video at issue does not constitute work product; and, the timing of disclosure should not be delayed. Therefore, the video must be produced to Plaintiff prior to Plaintiff's deposition.

First, at the hearing on the Motion as in its papers, Defendant agrees that when the

4

video was originally made by NCL, it was not made in anticipation of litigation; and, thus did not constitute "work product" at the time it was created. However, Defendant argues that it became subject to work product protection when it was preserved based upon instructions by Counsel for NCL.[3] In sum, Defendant argues that the act of preserving the video was done in anticipation of litigation and at the behest of counsel, and thus protects the video from disclosure pursuant to the work product doctrine.

However as explained by the undersigned at the hearing, once NCL was aware that a claim might be made based upon the Plaintiff's slip and fall incident, NCL had a duty to preserve that tape, and counsel had a duty to advise NCL to do so. In this regard, NCL's decision to preserve the video is best viewed in the context of those cases where courts have examined spoliation claims based upon an entity's failure to preserve evidence despite notice that it a lawsuit might be forthcoming. *See, e.g., Cox v. Target Corp.*, 131 Fed. Appx. 381 (11th Cir. 2009) (citing cases re: spoliation); *Williams v. Wal-Mart Stores, Inc.*, 342 Fed. Appx. 478 (11th Cir. 2009), *aff'g*, 584 F. Supp.2d 1316 (M.D. Ala. 2008) (analyzing spoliation claim based on failure to preserve video surveillance tapes of area where slip-and-fall accident occurred); *Aiello v. Kroger Co.*, 2:08-CV-01729-HDM-RJJ, 2010 WL 352225 (D. Nev. Sept. 1, 2010) (same). It would be anomalous, to say the least, if by ordering a client to preserve evidence created in the ordinary course of business, in anticipation of litigation, counsel was able to shield that evidence from production based upon work product protection.

Moreover, in determining that the act of preserving the tape does not convert the

---

[3] Counsel for NCL has provided an Affidavit from Jane Kilgour, the NCL Manager of Passenger Claims, which states that the video was reviewed as part of NCL's investigation in anticipation of litigation, and the sole reason it was preserved was because NCL anticipated litigation (DE # 27-1).

tape into work product protected from disclosure, the decision of the Fourth District Court of Appeal of Florida in *Target Corp. v. Vogel*, 41 So. 3d 962, 963 (Fla. Dist. App. 2010), is persuasive. There, the Court expressly held that a video of the accident itself is not work product and thus is discoverable. Specifically, in *Vogel*, the Court ordered production of a surveillance video prior to the plaintiff's deposition, and distinguished between a surveillance video tape of the slip and fall taken at the time of the accident in that case, from those cases in which a surveillance video was taken after an incident, usually by a defense private investigator. *Vogel* at 963 (distinguishing case from *Dodson v. Persell*, 390 So.2d 704 (Fla. 1980) where video made after incident by private investigator). Although *Vogel* was decided under Florida law, and federal courts apply the federal work product privilege rather than the state work product privilege to federal cases, the *Vogel* court's analysis is wholly consistent with the Federal work product privilege and thus applies with equal force to the case sub judice.

In this matter, there is no question that the video tape was made as part of the normal course of surveillance videos made by NCL. Thus, the video was not created in the work product context for purposes of or in anticipation of litigation. As such, the video is not protected by the work product privilege. Further, as discussed above, the act of preserving that non-privileged video did not then convert it to work product. Thus, although there may be instances where the undersigned concludes that a surveillance video made at the time of the relevant incident may be considered work product, under the facts of this case, the Court finds that the video is not work product because there has been no showing that it was prepared in anticipation of litigation.

Defendant's reliance on *Bolitho v. The Home Depot USA, Inc.*, Case No. 10-60053-CIV-COHN-SELTZER, does not alter this Court's conclusion, although the scenario in

*Bolitho* is remarkably similar to the scenario in the case at bar, and the Court there delayed production until after the plaintiff's deposition. In *Bolitho*, in the Magistrate Judge's opinion denying the Plaintiff's request for production of the video prior to the plaintiff's deposition, the Court relied upon the ruling in *Dodson v. Persell*, to determine that the video constituted work product. However, as discussed above, *Dodson* involved a request for a surveillance video made after the incident, rather than a video of the actual accident made prior to the anticipation of litigation. Further, although Defendant correctly points out that the Magistrate Judge's opinion was affirmed by the District Judge in *Bolitho*, the District Judge held that even if he would have decided the matter differently on de novo review, there was no unfairness in requiring the plaintiff to sit for her deposition prior to the video being produced to her. Thus, the affirmance of the work product determination is *dicta*. For the reasons stated previously, the undersigned declines to follow *Bolitho* to the extent that it holds that a surveillance video made in the regular course of an entity's business, which captures an accident at the time it occurs, becomes work product when counsel orders its preservation.

  Finally, as argued by Plaintiff, the other cases cited by the Defendant in support of its position are distinguishable because there was evidence in those cases that the plaintiff was likely to fabricate his/her testimony, or like *Dodson*, they involved after-the-fact surveillance tapes *created* in anticipation of litigation, rather than tapes which were merely *preserved* in anticipation of litigation.

  The undersigned recognizes that even though the tapes at issue are not work product, the Court retains the discretion to control the timing of discovery. Thus, under appropriate circumstances, the Court would not require production of a videotape prior to a plaintiff's deposition. While not dispositive to the undersigned's ruling on this issue,

in determining that it is appropriate for the Defendant to produce the video tape prior to the Plaintiff's deposition, the Court has considered the fact that, as confirmed by the Defendant at the hearing, the Plaintiff made statements concerning the accident, at the time it occurred, to ship personnel.  In addition, Plaintiff described the location of her fall, albeit inaccurately, at the time she attended the inspection of the vessel.  Defendant has failed to point to any aspect of the video, and/or any action by Plaintiff, that would cause this Court to find that disclosure of the video would lead Plaintiff to improperly tailor her testimony.  As such, there appears to be little, if any, prejudice to the Defendant if the Plaintiff is permitted to view the video to refresh her recollection prior to her deposition. Accordingly, the Defendant shall produce the video to the Plaintiff prior to her deposition, under the terms discussed at the hearing–either by providing a copy, or providing access if a viewable copy cannot be made due to the need for proprietary software.

### B.  Plaintiff's Motion to Compel 2nd Shipboard Inspection

In this Motion, Plaintiff seeks to have this Court compel the Defendant to permit a second inspection aboard the NCL cruise ship "Jewel" where Plaintiff's accident occurred.  According to the Motion, although Plaintiff has already inspected the ship once, because Plaintiff's husband was not permitted to attend that inspection, Plaintiff misidentified the location of the incident by approximately by twelve feet.  Plaintiff contends that her misidentification was purely innocent; and, as a result of that misidentification, Plaintiff's expert tested a different area than the area where Plaintiff fell.  In support of the Motion, Plaintiff submitted the Affidavit of Barbara Schulte wherein Ms. Schulte states that shortly after she fell on the deck of the ship, ship personnel arrived at the scene and took her directly to the medical facility for medical care (DE # 30-1).

At the hearing, Defendant argued that Plaintiff should not be permitted to re-

inspect the ship because at the time of the initial inspection, there was no indication that the Plaintiff was not aware of where on the ship the accident had occurred, and thus Plaintiff should not be allowed a second opportunity, particularly in light of the costs Defendant will have to incur in arranging the second inspection.  In the alternative, Defendant argued that Plaintiff should be compelled for the costs incurred in conducting a second inspection, including attorney's fees.

      The Court finds, under the facts of this case, it is appropriate to permit the Plaintiff to have a second inspection of the ship so that the Plaintiff's expert may examine and test the relevant area of the ship where Plaintiff actually fell, rather than having the expert render an opinion on an area of the ship that may not be relevant to the just resolution of this matter.  In reaching this result, the undersigned notes that based upon its videotape of the accident, NCL was aware, at the time of the inspection, of the area where the fall occurred.  Although perhaps there was no obligation to point this out to Plaintiff's expert, the failure to do so, especially in light of Defendant's refusal to produce the video, militates in favor of a second inspection. However, because Plaintiff has already had one opportunity to inspect the ship, and it was her obligation to ensure that she had all the information necessary to enable an appropriate inspection, the undersigned agrees, as ordered at the hearing, that any additional costs associated with a second inspection should be borne by the Plaintiff.  Such costs will be payable at the conclusion of this matter.  In addition, given the rapidly-approaching discovery deadline date, the Parties shall conduct the second shipboard inspection on or before February 2, 2011.

### III. CONCLUSION

Therefore, based on the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Protective Order and to Compel Discovery (DE # 23) is **GRANTED** and Defendant's Motion for Protective Order Regarding Production of Video (DE # 22) is **DENIED.** Defendant shall provide Plaintiff with a copy of the videotape prior to her deposition, or make appropriate viewing arrangements, as discussed at the hearing and described above. It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel 2nd Shipboard Inspection (DE # 30) is **GRANTED** and Plaintiff's Motion to Expedite Briefing Schedule on Motion to Compel 2nd Shipboard Inspection (DE # 35) **is DENIED AS MOOT.** However, Plaintiff shall bear the costs associated with the second Shipboard Inspection, including costs associated with the attendance at that inspection by Counsel for Defendant. Plaintiff shall pay such costs at the conclusion of this case.

**DONE AND ORDERED** in chambers in Miami, Florida on January 25, 2011.

*Andrea M. Simonton*

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF to:
The Honorable K Michael Moore
   United States District Judge
All counsel of record